UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIELLE PAULSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-04665 |
| | ) | |
| v. | ) | Judge John Robert Blakey |
| | ) | |
| THIS IS L. INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Danielle Paulson, on behalf of a putative class, sues Defendant, "This is L. Inc.," based upon allegedly misleading product labeling statements. Plaintiff asserts claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and other states' consumer fraud acts; breaches of express and implied warranties, including the warranty of fitness for a particular purpose, and violation of the Magnuson Moss Warranty Act; negligent representation; fraud; and unjust enrichment. *See* [1]. Defendant moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6), [16]. For the reasons explained more fully below, this Court grants in part, and denies in part, the motion to dismiss.

I.  The Complaint's Allegations

As a matter of personal choice, Plaintiff "seeks to purchase personal care products which do not include non-natural and non-organic components and added synthetic coloring." [1] ¶ 35. Consistent with this policy, between August 2020 and August 2021, Plaintiff purchased Defendant's tampons (the "Product") from various stores, including Target. *Id*. ¶ 36. The Product's label read, in relevant part,

1

100% ORGANIC
COTTON CORE
TAMPONS
with BPA-FREE PLASTIC APPLICATORS

NO RAYON, CHLORINE BLEACHING,
DYES OR FRAGRANCES

*Id.* ¶¶ 1–2. Plaintiff alleges that the Product's labeling misled her into believing the Product was entirely cotton and organic because consumers understand "100%" to mean "completely" or "entirely." *Id.* ¶¶ 3, 53–54. And she alleges that, based upon this understanding, she paid a higher price for the Product than she would have paid if she had known it contained non-organic and non-cotton components. *Id.* ¶¶ 37–40.

Plaintiff alleges that, after reading the fine print on the back of the Product's container, she learned that the Product, in fact, contains "non-cotton and non-organic" ingredients. *Id.* ¶ 8. Indeed, Plaintiff alleges that "eighty percent of the Product's ingredients are not cotton," and "sixty percent of the Product's ingredients are not organic." *Id.* ¶¶ 9–10. For example, the Product contains a color enhancing ingredient, titanium dioxide, which is a non-organic, "synthetically prepared powder used as a white pigment"; according to the label, this ingredient makes the cotton look white and is "naturally occurring." *Id.* ¶¶ 14, 15. Plaintiff admits that the presence of titanium dioxide does not make the Product's statements about no "chlorine bleaching" and no "dyes" false, but she alleges that the statements mislead nonetheless because titanium dioxide "serves the identical purpose" as dye and chlorine. *Id.* ¶¶ 12–17.

Plaintiff claims Defendant knew what product characteristics she and other similarly situated potential consumers desired and labeled its product to meet those desires, even though the Product failed to measure up. *Id.* ¶ 60. Plaintiff alleges that

potential customers, like her, relied upon Defendant's deceptive conduct and thus were induced to purchase the Product at a price higher than they would otherwise have paid if they had known the truth. *Id.* ¶¶ 46, 77. On behalf of a putative class, she claims: violations of the Illinois Consumer Fraud and Deceptive Business Practices Act and other states' consumer fraud statutes; breaches of express warranty, the implied warranties of merchantability and fitness for a particular purpose, and the Magnuson Moss Warranty Act; negligent misrepresentation; fraud; and unjust enrichment.

Defendant seeks to dismiss all claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.    Legal Standards

To survive a 12(b)(6) motion, a complaint must include a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), and providing "fair notice" of the claim and "the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint must "state a claim to relief that is plausible on its face." *Yeftich v. Navistar, Inc.,* 722 F.3d at 915 (quoting *Twombly*, 550 U.S. at 579).

For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the factual allegations required to state a plausible claim for relief depend upon the complexity of the case, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *Limestone Dev. Corp. v. Vill. Of Lemont*, 520 F.3d 797, 803–04 (7th Cir. 2008).

On a motion to dismiss, this Court considers the "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The Court construes the complaint in the light most favorable to Plaintiff, accepts as true all well-pleaded facts, and draws all reasonable inferences in her favor. *Yeftich*, 722 F.3d at 915; *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). The Court need not accept statements of law as true, however. *Yeftich*, 722 F.3d at 915.

### III. Discussion & Analysis

Defendant argues that the Court should dismiss Plaintiff's claims because she fails to plead causes of action with respect to each theory of relief and because she lacks standing to seek injunctive relief. Because Defendant's standing argument presents a threshold issue, the Court addresses it first.

#### A. Standing to Pursue Injunctive Relief

Defendant argues that Plaintiff lacks standing to seek prospective injunctive relief. [16] at 14. To establish standing to seek such forward-looking relief, a plaintiff must face "a 'real and immediate' threat of future injury." *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019). Plaintiff does not: because she admits she knows the truth about the Product, she faces no risk of future harm from being deceived by the Product's allegedly misleading statements. Plaintiff thus lacks standing to seek prospective injunctive relief. *E.g., Rice v. Dreyer's Grand Ice Cream, Inc.*, 624 F. Supp. 3d 922, 926 (N.D. Ill. 2022); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014).

4

Plaintiff claims she is harmed because Defendant has spoiled her ability to rely upon product labeling and representations, not only for this Product, but for other similar women's personal care products represented to be entirely cotton or organic, without synthetic materials or without added coloring. [1] ¶ 43. But such allegations concerning threats of future injury remain "merely conjectural or hypothetical," not real and immediate. *See Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). The Court thus dismisses Plaintiff's request for injunctive relief.

### B. Plaintiff's ICFA Claim

Turning to Plaintiff's substantive claims, Defendant first seeks to dismiss Plaintiff's Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claim, arguing that Plaintiff fails to plausibly allege Defendant committed a deceptive act. [16] at 3–10.

Under the ICFA, a "label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020); *see also Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (holding that a statement is deceptive "if it creates a likelihood of deception or has the capacity to deceive"). To analyze the likelihood of deception, courts apply a reasonable consumer standard, which requires the plaintiff to demonstrate "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). When considering deceptive

5

advertising claims, the Court must consider "all the information available to consumers and the context in which that information is provided and used." *Bell*, 982 F.3d at 476. Dismissal on the pleadings may be appropriate "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising." *Id.* at 477.

### 1. Deception Based Upon the "100% Organic Core" Statement

Plaintiff first claims that the label indicating "100% Organic Cotton Core" misleads a reasonable consumer to think that the *entire product* (not just the core) is organic and cotton. *See* [1] ¶¶ 3, 53. Defendant argues that no "reasonable consumer would believe that the Tampons were made entirely of 'cotton and/or organic' ingredients where the front label prominently discloses the use of plastic." [16] at 5. Defendant further contends that the label's description is "true and unambiguous" and that from "both a grammatical and a visual perspective," the "100% organic cotton" claim applies to the tampon's core, not the entire product. *Id.* at 5–6.

In *Palmer v. Procter & Gamble, Co.*, No. 22-cv-5036, 2023 WL 5852252 (N.D. Ill. Sept. 11, 2023), the plaintiff asserted almost identical claims, arguing that the defendant's Tampax tampons "pure cotton\*" product "misleads consumers into believing that all of its components are made from cotton, lack added coloring, and that its plant-based applicators are an ecological alternative to oil-based plastic applicators." 2023 WL 5852252, at \*1. The court determined that the "pure" and "100%" claims on the label "could plausibly be interpreted within their context to mean the entire product is composed of that ingredient or material"; or consumers could "interpret the term 'cotton core' to be the entire tampon as the 'core' of the applicator, or just a smaller 'core' within

6

the tampon itself (applicator aside)"; or consumers could "interpret the phrase 'CONTAINS 100% ORGANIC COTTON CORE' to mean the 'core' is entirely made of organic cotton, or that some unspecified percentage of the 'core' contains cotton that is 100% organic." *Id.* at *5. Noting that an "otherwise false advertisement is not rendered acceptable merely because one possible interpretation of it is not untrue," the court declined to dismiss the complaint. *Id.* The *Palmer* court found that the statements on the label, taken together and with the "associated imagery," clearly sought "to evoke a connection between" the Tampax product and "pure cotton." *Id.*

The *Palmer* court, relying upon *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 478 (7th Cir. 2020), found that, despite the technically true nature of the label statements, and despite other statements on the label clarifying any ambiguity on the label, the plaintiff had plausibly alleged a claim under the ICFA relating to the "pure cotton" statement. 2023 WL 5852252, at *5. *Bell* involved cheese, not tampons, but the case nonetheless remains relevant. There, the plaintiffs alleged they were misled by the products' front labels stating "100% Grated Parmesan Cheese" because the products also contained "between four and nine percent added cellulose powder and potassium sorbate." 982 F.3d at 473. Although the presence of these other ingredients was readily apparent to any consumer who took the time to "read the fine print" of an ingredient list "on the back of the package," and, although the "the context of the entire packaging" remains relevant, "an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers." *Id.* at 476. Indeed, the *Bell* court noted, many reasonable consumers "do not instinctively parse every front label or read every back label before placing groceries in

7

their carts." *Id*. For this reason, the Seventh Circuit reversed the district court's dismissal of the plaintiff's ICFA claim. The court reiterated, however, that "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used," and that dismissal may yet be appropriate "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising." *Id*. at 477.

This case differs from *Palmer* and *Bell* in one significant, outcome-determinative respect: in contrast to the labels at issue in *Palmer* and *Bell*, the label here includes prominent statements on the front that render Plaintiff's interpretation unreasonable. For example, the statement "BPA-Free Plastic Applicators" on the front of the label directly below the "100% organic cotton core" statement undermines any notion that the "100% Organic Cotton Core" statement may plausibly be interpreted to mean that the *entire product* is organic cotton. A consumer thus need not parse the Product's label, or turn to the back label or fine print, to understand that the whole product is not entirely cotton and organic. Such clear label language, *both prominent and on the front of the packaging*, precludes Plaintiff's contention that a reasonable consumer would construe these two inapposite statements to mean that the entire Product was "entirely cotton and/or organic." [1] ¶ 8. In contrast to the claims in *Palmer*, which remained predicated upon a reasonable interpretation of the function and appearance of the label statements, Plaintiff's claim here lacks plausibility.

Plaintiff alleges that consumers "value personal care products represented as 100 percent of a natural substance because such a statement necessarily implies the absence of non-natural and synthetic substances." [1] ¶ 4. She alleges no facts to support the

8

point, and the Court need not accept such conclusory statements as true. *Iqbal*, 556 U.S. at 678. Instead, the Court, considering "all the information available to consumers and the context in which that information is provided and used," must consider how a real consumer "would understand and react to the advertising." *Bell*, 982 F.3d at 476–77. A real and reasonable consumer seeing a label prominently announcing plastic applicators would not believe the Product was made entirely from cotton or other organic matter, as the presence of plastic necessarily undermines that notion. For these reasons, Plaintiff's interpretation of the "100% Organic Core" label as suggesting that the entire product is organic remains unreasonable, and the Court dismisses her claim as to this theory.

## 2. Deception Based Upon the "No Chlorine Bleaching," "No Dyes" Statements

Defendant also argues that Plaintiff fails to allege any misleading representation about the presence of coloring agents. [16] at 6–10. In particular, Defendant argues that the statements "No Chlorine Bleaching" and "No Dyes" cannot be misleading because, as Plaintiff admits, the statements remain true: the Product, in fact, contains no chlorine bleaching and no dyes. The presence of titanium dioxide makes the statements no less true, as titanium dioxide, as Plaintiff concedes, constitutes neither a dye, nor chlorine bleach. *Id.* at 6. Defendant contends that Plaintiff's claim thus is predicated upon an unreasonable interpretation of these factually true statements. *Id.* at 7. Defendant argues that no reasonable consumer would be misled because the back of the Product's box discloses the presence of titanium dioxide, which is consistent with the front label disclosing no dyes. *Id.* at 10.

9

Once again, *Palmer* remains instructive. In *Palmer*, the plaintiff made the exact same claim, alleging that the statement "TAMPONS FREE OF DYES & CHLORINE BLEACHING," though true, was misleading because of the presence of titanium dioxide. The defendant disagreed, and the court sided with the plaintiff, finding it "plausible that reasonable consumers could construe Defendant's labeling, even if it is literally true, as meaning the Product lacked added coloring." *Palmer*, 2023 WL 5852252, at *6 (citing *Beardsall v. CVS Pharmacy*, 953 F.3d 969, 973 (7th Cir. 2020) ("A label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false.").

Because Plaintiff's allegations remain substantively identical to the claims in *Palmer*, this Court adopts the reasoning in *Palmer* (and follows *Bell*), finding that a reasonable consumer could construe Defendant's truthful labeling to signal the complete absence of any coloring agent. This precedent controls, especially where, as here, Defendant's theory requires a consumer to parse the Product's label. Although Plaintiff fails to allege an ICFA claim with respect to the Product's "100 Organic Cotton Core" statement, she does adequately allege an ICFA claim with respect to the Product's "No Chlorine Bleaching or Dyes" statements, and she may proceed on her ICFA claim to this extent.

Trying to escape *Palmer* and *Bell*, Defendant argues that a manufacturer's product may contain a "negative" attribute and still advertise a product's positive qualities without being misleading. [16] at 7–8. And to support its position, it cites *Stuve v. Kraft Heinz Co.*, No. 21-cv-1845, 2023 WL 184235, at *10 (N.D. Ill. Jan. 12,

10

2023), and *George v. Starbucks Corp.,* No. 19-cv-6185 (AJN), 2020 WL 6802955, at *1–2 (S.D.N.Y. Nov. 19, 2020), *aff'd*, 857 F. App'x 705 (2d Cir. 2021).

But this case is neither *Stuve* nor *George*. In *Stuve*, the court held that statements touting "NO Artificial Preservatives," "NO Artificial Flavors," and "NO Artificial Dyes" on the front of a macaroni and cheese box would not reasonably mislead consumers to believe the product was "wholesome, safe, and healthy" and free of "dangerous chemicals or artificial substances, like phthalates"; the "alleged presence of a negative substance does not prohibit a manufacturer from advertising a product's positive qualities." 2023 WL 184235, at *10. And, in *George*, the court found that the statements "no artificial dyes or flavors" on Starbucks' baked goods would not mislead reasonable consumers to believe anything "about the company's use or non-use of pesticides in its stores." 2020 WL 6802955, at *2. Neither *Stuve* nor *George*, however, involved the presence of some other functionally equivalent ingredient in products touting the absence of such ingredients. Here, Plaintiff alleges that the Product contains titanium dioxide, which "serves the identical purpose of dye and chlorine bleaching"—namely, to make the Product appear whiter in color. [1] ¶ 16.[1]

---

[1] Likewise, in *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 754 (N.D. Ill. 2015), the plaintiff claimed the defendant's label was misleading because it advertised "no refined sugars" when the product, in fact, contained evaporated cane juice, a sweetener derived from sugar cane. *Id*. at 758. The court disagreed and dismissed the plaintiff's complaint, finding the challenged statements not misleading as a matter of law. *Id*. at 759. Significantly, the court noted that the product label, which the plaintiff read, listed "evaporated cane juice" as an ingredient and, "no reasonable consumer would think—as Ibarrola alleges she did—that the sugar contained in Kind's Healthy Grains products was still in its natural, completely unrefined state," a state like "a grass that contains jointed stalks resembling bamboo" that are "made up of fibrous flesh surrounded by bark." 83 F. Supp. 3d at 757. To the extent Defendant here is attempting to analogize dyes and chlorine bleaching and titanium oxide with raw sugar cane, the attempt fails. No reasonable consumer could read "no refined sugars" alongside an ingredient list containing evaporated cane juice and think the product was completely free of refined sugars because sugar cane must necessarily be refined to be used. But the Court cannot say that no reasonable consumer could read "no dyes or chlorine bleaching" alongside "titanium oxide" and still think the product was free of any and all whitening agents. The reasonable consumer may not understand the subtle distinction between the

11

Accordingly, Plaintiff sufficiently states a claim under the ICFA with respect to this portion of Defendant's label.

### C. Plaintiff's Claims under Other States' Consumer Fraud Acts

Defendant seeks to dismiss Plaintiff's out-of-state consumer protection claims for the same reasons discussed above. [16] at 11. The out-of-state claims, like the ICFA claim, remain premised upon the same two front label statements discussed above: "100% Organic Cotton Core" and "No Chlorine Bleaching or Dyes." As above, because the "100% Organic Cotton Core" statement on the Product's label is not deceptive as a matter of law, the Court dismisses all of the consumer fraud claims based upon this statement, as more fully explained above. Similarly, the Court declines to dismiss the out-of-state consumer fraud claims with respect to the statements advertising that the Product implicates no chlorine bleaching or dyes.

### D. Plaintiff's Warranty Claims

Defendant next seeks to dismiss Plaintiff's warranty claims. In Illinois, any "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS 5/2-313(1)(a). Moreover, Illinois law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 801 ILCS 5/2-314(1). Goods may be merchantable when they "pass without objection in the trade under the contract description" and "are fit for the ordinary purposes for which

---

products and their character is not so self-evident that the claim becomes implausible. *See Bell*, 982 F.3d at 476 ("Plaintiffs' claims survive if they have plausibly alleged that the defendants' front labels likely lead a significant portion of reasonable consumers to falsely believe something the back labels belie.").

12

such goods are used." 801 ILCS 5/2-314(2)(a), (c). Goods are fit for their particular purpose where "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods," and the goods fit such purpose. 810 ILCS 5/2-315.

To state a breach of express warranty claim, a plaintiff must allege that a seller: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020). As a general rule, "a plaintiff must state the terms of the warranty alleged to be breached or attach it to the complaint." *Baldwin v. Star Scis., Inc.,* 78 F. Supp. 3d 724, 739 (N.D. Ill. 2017) (internal quotation marks and citation omitted).

A buyer seeking to sue for breach of an express or implied warranty must first notify the seller of its breach. *Ibarrola*, 83 F. Supp. 3d at 760. A plaintiff's failure to comply with the notice requirement may be excused if the plaintiff alleges that she suffered a physical injury or that the defendant had actual knowledge of the product's defect. *Id.* at 760. But such failure is not excused if the plaintiff suffered only economic damages. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 590–91 (Ill. 1996) (holding that dismissal was appropriate because plaintiffs suffered only economic damages and did not provide pre-litigation notice).

Plaintiff alleges that Defendant "expressly and impliedly warranted to Plaintiff that its Product was entirely cotton and organic." [1] ¶ 58. Plaintiff asserts that Defendant directly marketed the Product to Plaintiff through various mediums, and

13

that "Defendant's representations affirmed and promised the Product was entirely cotton and organic." *Id*. at ¶¶ 59, 62. She claims that the Product "was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging. . . ." *Id*. ¶ 70. Finally, Plaintiff claims the Product "was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff." *Id*. ¶ 71.

Defendant argues that this Court should dismiss Plaintiff's warranty claims because Plaintiff: (1) fails to allege she provided Defendant proper pre-suit notice; (2) fails to plausibly plead privity of contract; and (3) fails to allege an implied warranty. [16] at 11–12. The Court agrees that Plaintiff did not meet her pre-suit notice obligation, and thus need not consider Defendant's privity and implied warranty arguments.

Plaintiff argues that her Complaint provides adequate notice. But the notice requirement is designed to encourage pre-suit settlement negotiations, *In re McDonald's French Fries Litig*., 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007); the requirement would be meaningless "if a party could satisfy the notice requirement by filing suit. . . ." *Rudy v. Fam. Dollar Stores, Inc.,* 583 F. Supp. 3d 1149, 1163 (N.D. Ill. 2022).

*In Re Bridgestone/Firestone, Inc. Tires Products*, 155 F. Supp. 2d 1069 (S.D. Ind. 2001), does not compel a different result. Although the court in that case found that the filing of suit *could* satisfy the notice requirement, *id*. at 1110, the case, which remains non-binding, admittedly ran afoul of precedent from the Illinois Supreme Court, which held that the notice requirement could not be met by filing suit, except in circumstances not present here. *Id*. (observing that the Illinois Supreme Court held in *Connick*, 675

14

N.E.2d at 590, that "under Illinois law only a consumer buyer who suffered a personal injury may satisfy [the notice requirements set forth in the Uniform Commercial Code] by filing suit"). Nor does Plaintiff's allegation that Defendant received "complaints by third parties" absolve Plaintiff of her duty to notify Defendant. At best, this allegation suggests "generalized knowledge" of the supposed defect, which remains insufficient. *See Connick*, 675 N.E.2d at 590.

Because Plaintiff failed to notify Defendant of the alleged breach before filing this lawsuit, and because she offered no justification to excuse that failure, the Court dismisses Plaintiff's claims for breach of express and implied warranties.

The Court also dismisses Plaintiff's Magnuson Moss Warranty Act ("MMWA") claim because it relies upon the same factual allegations as her state law breach of express and implied warranty claims. *See Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781 (7th Cir. 2011) (stating that "the MMWA operates as a gloss" on state law breach of warranty claims); *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 717 (N.D. Ill. 2020) (dismissing plaintiff's MMWA claims "because it is contingent on plaintiff having a viable state law warranty claim"); *Bartosiake v. Bimbo Bakeries USA, Inc.*, 632 F. Supp. 3d 789, 796–97 (N.D. Ill. 2022).

### E. Plaintiff's Remaining Claims

In addition to the claims discussed above, Plaintiff alleges negligent misrepresentation, unjust enrichment, and common law fraud. Defendant asks the Court to dismiss all of these claims as well.

Defendant initially argues that Plaintiff's remaining claims fail because they are all based upon the same theory as Plaintiff's ICFA claim. [16] at 10. Having found that

15

Plaintiff' fails to allege an underlying deceptive act with respect to the "100% Organic Cotton Core" statement, the Court agrees that these remaining claims should be dismissed to the extent they are predicated upon that statement. But Plaintiff sufficiently pleads a deceptive act concerning the chlorine bleaching and dyes statement, and the Court thus declines to dismiss these claims to the extent predicated upon this statement.

Defendant next argues that the *Moorman* doctrine bars Plaintiff's negligent misrepresentation claim. The *Moorman* doctrine, announced by the Illinois Supreme Court decades ago, states that plaintiffs "cannot recover for solely economic loss under the tort theory . . . of negligence. . . ." *Moorman Mfg. Co. v. Nat'l Tank Co.,* 435 N.E.2d 443, 453 (Ill. 1982). The *Moorman* doctrine "denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations." *Chiappetta v. Kellogg Sales Co.*, No. 21-cv-3545, 2022 WL 602505, at *7 (N.D. Ill. Mar. 1, 2022) (quoting *Sienna Ct. Condo. Assoc. v. Champion Aluminum Corp.*, 129 N.E.3d 1112, 1119 (Ill. 2018)). Here, Plaintiff alleges only economic injury, which is not compensable under a tort theory of liability pursuant to the economic loss doctrine.

Plaintiff argues that her claim satisfies an exception to the doctrine. [20] at 8–9. Specifically, she asserts that a plaintiff who suffers purely economic losses may maintain a claim for negligent misrepresentation against "one who is in the business of supplying information for the guidance of others in their business transactions." *See Moorman*, 435 N.E.2d at 452. Plaintiff contends that "Defendant's 'special knowledge and experience' as 'an industry leader in natural and organic women's personal care products,' and its 'outsized role in this market' created a duty, 'outside of the contract'

to provide non-deceptive information, which it breached." [20] at 8–9.

Plaintiff points to *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 515 (Ill. 1994) to support her theory. But her reliance is misplaced. In that case, the plaintiff sued the defendant, an accounting firm, under a theory of negligent misrepresentation for losses allegedly resulting from the firm's preparation of financial statements to be used by the plaintiff. *Id.* at 505. The defendant argued that the *Moorman* doctrine precluded such a claim. *Id.* at 510. Because the case involved services offered by skilled professional accountants, who have a legal duty "to observe reasonable professional competence" independent of any contract, the court found that the economic loss doctrine did not bar the plaintiff's recovery on its negligent misrepresentation claim. *Id.* at 506, 515.

Here, Defendant was not in the business of providing professional advice to its customers and had no fiduciary duty to observe professional competence independent of any contract. *See First Midwest Bank v. N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 340 (Ill. 2006) ("the focus of the negligent misrepresentation exception to the economic loss doctrine must be on whether the defendant is in the business of supplying information as opposed to providing something tangible"). Defendant may have provided marketing information to consumers that was ancillary to the sale of the Product (like all sellers), but that does not bring Defendant within the scope of the exception. *See id.* ("[T]he negligent misrepresentation exception to the *Moorman* doctrine is not applicable if the information supplied is merely ancillary to the sale of a product.").

Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's negligent

misrepresentation claim.

IV.     **Conclusion**

For the reasons explained above, this Court grants in part and denies in part Defendant's motion to dismiss [36]. The Court dismisses Plaintiff's ICFA, multi-state consumer fraud, fraud, and unjust enrichment claims to the extent predicated upon statements relating to the 100% organic or cotton core but denies the motion to dismiss these claims to the extent predicated upon the statements concerning the absence of chlorine bleaching and dyes. The Court dismisses Plaintiff's breach of warranty and negligent misrepresentation claims.

Dated: March 26, 2024.

                                        Entered:

                                        John Robert Blakey
                                        United States District Judge